TYSON, Presiding Judge.
Jasper Holt and his wife, Geraldine, were indicted for the grand larceny of $80.00 in coins, the personal property of Phillip Davis. The jury found the appellant guilty as charged, and judgment fixed punishment at three years imprisonment.
Mrs. Forrestine Rorex testified that she was a lifetime resident of Stevenson, Alabama, and on Friday, April 14, 1972, she had gone to the Ideal Beauty Shop on Main Street in Stevenson. She stated that about 2:30 that afternoon she observed Mr. and Mrs. Holt pull up in front of the beauty *583 shop and then circle around the block. She noted that they were talking with each other in the car and pointing toward her sister’s home. Mrs. Rorex said she was seated in the front dryer in the beauty shop which faces the front door, and that she had a clear view of Mr. and Mrs. Holt. She saw Geraldine Holt get out of the car and walk across Mountain Street to the side of her sister’s home. Mrs. Rorex stated that she then got up out of the chair, went out the front door, and around the corner to watch them. She saw Mrs. Holt go straight to the Davis home. At this point Mrs. Rorex went back inside the beauty shop and stood just inside the door where she could observe Mrs. Holt. She stated that the appellant was seated in the automobile looking about, and that she then saw Mrs. Holt come back by the beauty shop carrying a brown paper bag under her arm and that she ran toward the car. As Mrs. Holt got in, Mr. Holt hurriedly turned around and drove off. She stated that Mrs. Holt “was not out of her sight for more than about a minute.”
On cross-examination Mrs. Rorex stated that the Holts were driving a 1963 or 1964 maroon Chevrolet. She stated that the beauty shop was just a short distance from the home of Mr. Phillip Davis where she saw Mrs. Holt go. She further stated that the brown bag which Mrs. Holt was carrying “was about the size of a lunch sack.”
Mrs. Faye Meeker testified that she lived at Route 1, Stevenson, Alabama on April 14-15, 1972. She stated that Mr. and Mrs. Jasper Holt lived in an apartment next to her. She stated that she was renting her apartment from one Mrs. Jimmy Meeker, a first cousin of her husband. She stated that she was in her back yard on Saturday, April 15, when she observed the appellant, Jasper Holt, walk out the back door of his apartment with a “blue and white plastic piggy bank in the shape of a pig.” She stated that she watched him as he took the piggy bank and walked across the back yard toward a minnow tank where he kept minnows. She stated that this tank was a concrete block structure and had some boards to cover it. She stated that she saw him return to the apartment and that he did not have anything in his hand. She stated she talked with her husband later that afternoon about this. She stated that she had no interest in the outcome of the matter and was not related to any of the parties involved.
On cross-examination, she said the minnow tank had some old lumber on top of it and was “sort of used for storage.” She also stated that she had a very similar plastic piggy bank, and that she had gone inside to see if hers was still in her home, and that it was.
Phillip Davis testified that he lived at 102 Hamilton Street in Stevenson, Alabama, on April 14, 1972. He stated that he had signed a warrant on Saturday, April 15, 1972, charging the appellant, Jasper Holt, with grand larceny. He stated that on Friday, April 14, his sister-in-law had telephoned his wife, and that he went home and found that a blue and white plastic piggy bank that belonged to him and had $80.00 in coins in it was missing. He stated that on Saturday, April 15, he and his wife, Imogene, accompanied by Billy Glenn Odon and Sue Odon, drove over to the home of Jasper Holt. He related the following:
“Q. Go ahead, Mr. Davis.
“A. I told Jasper that I had witnesses seeing Jasper’s wife taking the money, the bank; I told Jasper, I said, ‘If you will bring the bank back,’ I told Jasper that I wanted the bank back is what I told Jasper. And he told me, Jasper asked me, he says, ‘How much money do you think is in the bank?’ And I told him, I said, ‘There is about $80.00 in the bank.’ And he told me he would come talk to me.
“Q. Did he ever come talk to you about it?
“A. No, sir.
“Q. Was that all that was said on that occasion?
“A. Yes, sir.
“Q. The next day was a Saturday?
“A. The next day was Saturday.
“Q. You didn’t have your bank or money back on that occasion?
*584 “A. No, sir.
“Q. Did you go over to where Jasper Holt lived sometime on Saturday?
“A. Saturday afternoon.
“Q. And what, if anything, did you do over there on that occasion?
“A. Freeman Meeker called me.
“Q. You can’t testify about Freeman Meeker or what he told you. You tell what Jasper and you said.
“A. I went over and found the piggy bank.
“Q. Where did you find it?
“A. In a concrete block thing with water in it.
“Q. Did you find any of your money? “A. No. sir.
“Q. And that was your personal property?
“A. Yes, sir.
“Q. All of that took place in Stevenson, Jackson County?
“A. Yes, sir.
“Q. Did you see Jasper Holt on that occasion on the Saturday you went over there?
“A. No, sir.
“Q. Where did you find, exactly where did you find the piggy bank over at Jasper’s?
“A. I found it on the side of the building, in this concrete thing; and it was under some boards.
“Q. Under some boards?
“A. Yes.
“Q. And this piggy bank you found, could you identify it as having been yours?
“A. Yes, sir.
“Q. It was yours?
“A. Yes, sir.”
Jasper Holt testified that he was twenty-three years of age and had lived for about four years in Jackson County out Alabama Highway 117, which runs from Stevenson to Flat Rock, across the river, and on across Sand Mountain. He testified he lived there in April, 1972, and that he knew Mr. Phillip Davis as his brother had worked with him. He stated that his home was about five miles from downtown Stevenson. He stated that in April, 1972, he owned a red 1961 Mercury automobile, and that he did not own a Chevrolet at that time. He admitted that on Friday, April 14, he and his wife had driven into downtown Stevenson and had been near the beauty parlor, but that he did not know Mrs. Rorex personally. He stated that later his wife had gone to Stevenson and taken his sister-in-law to the post office. He stated that he and his brother, Vinson Leon Holt, had gone fishing that afternoon. He said that his brother had been staying with them, but that he now lived in St. Charles, Illinois. He stated that at his home was an old minnow pit that was built from concrete blocks and had a shed type roof on it in the back yard. He denied having a piggy bank. He stated that when Mr. Davis came over with two or three people on Saturday, April 15, he told Mr. Davis that he did not know anything about the piggy bank, and “if that is the way you feel, go ahead and take out a warrant.” He stated that he did not take the $80.00, nor did he offer to pay him back the $80.00. On cross-examination Mr. Holt admitted that he left the Stevenson area soon after this and moved to the Chattanooga area where he worked for three or four months before going to Georgia where he worked picking fruit. He stated that he later moved to Michigan where he lived nine or ten months near Traverse City and worked picking cherries, apples, and other fruit. He stated that he then moved to Florida and worked in the orange groves at Welaka, which is about sixty miles from Tampa. He stated that following his arrest he made bond, but that he did not know when the case had been set and was not aware that a forfeiture on the bond had taken place. He stated that no one got in touch with him, though he heard that George Adams had tried to get in touch with him. He admitted that he was arrested in Florida and brought back on an extradition warrant. He further stated that his sister had been dating Mrs. Davis’ brother and had been to his home. He denied driving his wife near the beauty parlor in Stevenson, but said *585 that his brother had a 1963 maroon Chevrolet.
Philip Davis was called in rebuttal and he testified that he went to the place where Jasper Holt was living on Saturday, April 15,1972, and found the missing piggy bank. He also stated that the appellant’s sister had been dating Mrs. Davis’ brother about this time and that they had been at his home. He stated that Mrs. Davis’ brother was Jerry Allison, and that he was dating Shirley Holt. He stated that he had told the appellant, Jasper Holt, he wanted the $80.00 back, but that he had never told him that he would drop the charges.
I
The appellant contends that where, as here, the State brought out evidence of flight, he had the right to introduce evidence to explain this issue, and cites us to Mitchell v. State, 53 Ala.App. 625, 303 So.2d 123, cert. denied 293 Ala. 767, 303 So.2d 126, and authorities therein.
Appellant contends that he was prevented from explaining this during the following colloquy which occurred in the redirect examination of the appellant:
“Q. Mr. Holt, your brother that you testified about was living with you at the time this happened, did he have an automobile?
“A. Yes, sir.
“Q. Do you know what kind of car he had?
“A. Yes, sir.
“Q. What kind was it?
“A. A maroon ’63 Chevrolet.
“Q. Now, have you got any notice or any order to appear in court any time from the time you made bond until you were extradited within the past few days?
“A. No, sir.
“Q. Had you been informed that the charges had been dropped or something happened to them?
“MR. ARMSTRONG: I object to that. “THE COURT: Sustained.
“CONTINUATION BY MR. CAMPBELL:
“Q. Do you know, and I believe you said your wife appeared in court, has she ever been tried on this charge, Mr. Holt?
“A. No, sir.
“Q. And where did you say she lived the biggest part of the time since this happened; has she been with you or where has she been?
“A. With me except for a few months.
“Q. You and she were arrested on this charge; where did you live for the next several months after the arrest?
“A. When we were charged with this crime?
“Q. Yes.
“A. 117.
“Q. The same place at Stevenson?
“A. Yes, sir.
“Q. Do you know approximately how long she lived there after you and she were arrested on this charge?
“A. No, sir.
“Q. And I believe the District Attorney asked you if a bondsman ever found you. Did you know anything about the forfeiture and the case being set?
“A. No, sir.
“Q. Had you got a notice from anyone else?
“A. No, sir.
“Q. Were you trying to avoid prosecution or the law during this period of time?
“A. No, sir.”
As may be seen in examining the above colloquy, the appellant on cross-examination had explained his moving to Chattanooga and working in that area, and also in Georgia before going to Michigan, then to Florida to pick fruit. He had also stated that none of his relatives near Stevenson had advised him of his bond forfeiture or that he was wanted on a fugitive warrant. He also explained that he had been extradited from Florida and brought back for trial.
We are not persuaded under the circumstances as shown in this record that the appellant was precluded from giving evi *586 dence to explain his whereabouts during the approximately three and one-half years interval between his arrest and the trial, which was held on September 21, 1976. Moreover, the answer called for by the question on redirect clearly calls for hearsay testimony, therefore, the trial court’s sustaining of the State’s objection is proper. Coleman v. State, 37 Ala.App. 406, 69 So.2d 481.
The trial court here allowed the appellant considerable latitude to explain his whereabouts during the time interval involved, and we are not persuaded that reversible error is here shown. Jones v. State, 52 Ala.App. 184, 290 So.2d 251.
II
The appellant excepted to the trial court’s refusal to charge the jury on petty larceny.
The only evidence of value was Mr. Davis’ testimony that about $80.00 in coins were taken. Where, as here, there is no evidence tending to prove the commission of the lower offense, a failure to instruct the jury on the lower degree of the offense is not error. Whitehead v. State, 206 Ala. 288, 90 So. 351; Ward v. State, 19 Ala.App. 398, 98 So. 208, cert. denied 210 Ala. 366, 98 So. 210.
Inasmuch as there was no evidence offered as to the value of the stolen property other than Mr. Davis’ testimony, the trial court’s charge was clearly correct. Presley v. State, 26 Ala.App. 280, 158 So. 765.
We have carefully examined this record and find no error therein. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.